May it please the Court, my name is David McBride and I represent the Honorable John Carney, Governor of the State of Delaware, appellant in this proceeding and defendant in the case below. I'd like to reserve four minutes, if I may, for rebuttal. If my colleagues disagree with this, let me know. I'm going to give this 25 minutes aside. 15 minutes is just, given the complexity of the First Amendment issue, the standing issue, 15 minutes aside, I made a mistake when I put this for 15 minutes. It's not enough, so. Thank you, Your Honor. That's fine. Thank you. I'd like to, this appeal presents two issues, obviously. The first issue is whether the plaintiff I'm sorry, do you still want to limit it to four minutes? I'm not suggesting you change it, but just, you're still okay with four minutes? I would still like to reserve four minutes, if I may. The first issue in this case is whether the plaintiff has Article 3 and prudential standing to challenge all of the provisions of Article 4, Section 3 of the Delaware Constitution. Well, maybe you can help me understand what the district court judge and magistrate judge here did. I've never seen anything quite like this. At least as to articles dealing with common peace court and family court. The court found there was not Article 3 standing, but there was prudential standing? Am I misreading that? That is my understanding. I will confess that I am somewhat confused, because the court found in the court's first opinion One is dependent on the other, isn't it? I mean, don't you have to have articles? I don't think you can substitute prudential standing for Article 3 standing. So, and maybe the best way to frame the issue is to discuss the provisions of the Delaware Constitution. The political balance requirements of the Delaware Constitution have essentially two components. One is called the bare majority component, which requires that no political party can have more than a bare majority of members of the court. That's been in the Delaware Constitution for over 100 years. The second provision is a provision that requires, with respect to certain of the courts, but not all of the courts, that the members of the court be members of one of the two major political parties. How is that defined? It's not defined in the Constitution, Your Honor. How is it defined in a Delaware law? Well, in Title, I believe it's Title 15, that deals with Delaware election law, it defines major political parties as any party with more than 5% of the registered voters. So if the Green Party or the McKee Party were to secure 5% of the vote, wouldn't that make them a major party entitled to these positions? In Delaware, a few people on the block could be a major party. They are, isn't it? It is. But I think, Your Honor, the way the government has interpreted the provision of the Constitution... Strictly Democrat-Republican split. Well, it happens to be that Democrats and Republicans are the two largest parties. But they've interpreted that the way the provisions are written, it says that no party shall have more than a bare majority. Then it says, and the other members of the court will be of the other party. Which seems to suggest that what the constitutional drafters intended was that major political parties meant the two largest parties. Does that strike you as problematic? The fact that... Only Republicans and Democrats, forget the major party language for a second, only Republicans or Democrats may be judges of any court of the state of Delaware. Could such a state provision exist? So I'm an independent. The Constitution is telling me I can never be a judge. Your Honor, that's obviously not what the Delaware Constitution says. Well, it kind of is what it says. It kind of is what it says. But it's not hypothetical as I put it. Well, I guess I would have to understand what the rationale would have been for selecting Republicans and Democrats. Would it matter in terms of the constitutional analysis? Well, I think it may matter because I think that the point of the provision, and point of saying that you must be a member of one of the two major political parties, is to try to assure, at least with the three courts that are impacted by that provision, that the members of that court reflect the political mainstream of Delaware. Now, that doesn't necessarily mean... That's a de facto ban on everybody else. Everybody else. If that's the way it's been interpreted, it's a de facto ban on everybody else, right? It is. It operates to limit the members of the judiciary to the two major political parties. But the reason that's a legitimate provision... But now you're arguing rational basis, which I wanted to get to. Because that's where your brief goes. It doesn't lay out that argument. But your brief is basically an attempt to establish that the provision survives rational basis inquiry, which under the First Amendment is not the right test. When I was reading your brief, I kept thinking this is rational basis review, rational basis review, which is not really in the case. Well, I think that what we are attempting to address when we address the purposes for these provisions is the question, which we actually don't think the court needs to reach, is whether these provisions are appropriate under the Branty standard. In other words... Don't get there yet, because that's a whole other... All right. I'll go back to standing then. Okay. Those are the two operative provisions. So are you conceding standing with respect to an independent individual pursuing a position on a court where the individuals have to be from one of the major political parties? Not prudential standing in this case. Article III standing. Article III standing, yes. So you are conceding Article III standing. Yes. So to go back, we have five paragraphs in the Delaware Constitution. The first deals with the Supreme Court. It requires both bare majority and major party. The next provision deals with the Superior Court. It also requires bare majority and major party. The third provision deals with a combination of Superior, Supreme, and the Court of Chancery, which I think, as a mathematical matter, probably comes out close to requiring bare majority and major party for the Court of Chancery. And then the last two provisions deal with Family Court and Common Pleas Court, which are only bare majority. The District Court, in its first opinion, said there's no Article III standing. The plaintiff does not have Article III standing with respect to the Common Pleas Court and the Family Court because, as an independent, he could never be excluded from those courts on the basis that he's a member of a party that already has a bare majority. Well, he also didn't apply. And he also did not apply. Correct, Your Honor. But he didn't apply to any, as of the time the suit was filed, he hadn't applied to any position. Isn't it true that had he applied for a position under Paragraphs I, II, or III, it would have been futile? He would not have qualified as an independent. He was not a member of a major political party. It would have been futile because the requirements, as I understood them, were for two Republican candidates that were issued and he was independent. So he would have no traction. It would have been futile, right? Yes. Even as a Democrat, it would have been futile. He didn't have to be an independent. A Democrat could not have gotten in the court then. With respect to certain of the provisions, as a Democrat, he would not have qualified. But, in fact, other provisions have opened up during the course of this litigation where a Democrat would be qualified to serve. And, in fact, some opened up where a Democrat or a Republican could qualify. Not an independent. But not an independent. Yes, Your Honor. Yes, Your Honor. You know, if I were to ask, and I did not do this because I don't have access to the folks, I will bet you if I were to ask a sixth grade student who has had some modicum of exposure to social studies, to the extent anybody gets social studies or civics these days, and unfortunately they don't, and I were to put the question to that student, the way I put it to you and the way you're opening it to me, they would say, you know, there's got to be something wrong with that. Are you telling me that in the United States, where you're guaranteed freedom of association and all these other wonderful things in the First Amendment, that if I'm a member of an independent, if I'm not a member of the Republican or Democratic Party, I can never be judged in the state of Delaware just because I'm not a member of the Republican or Democratic Party? That sixth grader would say, there's got to be something wrong with that. Well, I would. Sixth grader. I won't concede that I put the question to first graders or not. I understand the court's concern. It's obviously a legitimate concern, and we have attempted to explain in the brief why it's rational. Why it makes sense. If I may, Your Honor, I think the question is why it's appropriate. Appropriate doesn't help me. It may well be very appropriate and getting constitutional. So appropriate doesn't help me. Frankly, I'm a product of a state system where I was a state court judge for 10 years, as you may well know, and I ran in an election, and I can't think of any worse way to decide judges than leaving it up to committee people and warden leaders. This is a very well thought out, a very successful provision in terms of maintaining the quality of the state bench. I understand exactly why it's in place, and I'm very sympathetic to it. That doesn't mean that I think it's legal or, quote, appropriate. Well, let me ask this, Your Honor. I think let us assume we had a situation where the governor of a state, of all the governors of the state, for 100 years had appointed only members of one of the two major political parties to the bench of that court. That's the way it worked. It's not written down anyplace. It's not required, but they have the discretion. They have the discretion and collectively exercise that discretion to, over the space of 100 years, never appoint an independent to the bench of that court. As a matter of tradition. As a matter of their constitutionally permitted right to select members of the judiciary who they believe reflect their judicial philosophy or a judicial philosophy compatible with what they perceive as the mainstream of political views in the state. Can it be deemed unconstitutional in practice? I don't think it could be because the case that we have here is a situation where we have a collision between First Amendment rights and electoral rights. The First Amendment right of the applicant to a position. The First Amendment is higher up in the hierarchy. I would submit, Your Honor, the other is higher. Because what we're talking about, and this is the very issue that... Which other is higher? The other First Amendment right is what I would refer to as the First Amendment right of the electorate in general to have their electoral decisions, when they elect people, effectuated by appointments that that person can make to office. Without rationality, you have a provision in the wonderful states of Alabama, Mississippi. We say, no, I'm going to do this. Had provisions in the law that no non-white need apply. No non-white could be, because that reflects the collective will of the electorate of the people. That where you're going gets into that argument. No, I don't believe so, Your Honor. First of all, that would be unconstitutional for other reasons. Why would it be unconstitutional? Well, because it would discriminate on the basis of race. As opposed to political party. Well, but this isn't... You're saying you can't discriminate on the basis of political party, i.e. political belief. You made that argument. Well, now what? You can discriminate based upon political belief. What I'm saying is that you can discriminate based on who constitutes the major parties. If you want to identify a body of people that would reflect the mainstream, a perfectly appropriate way of doing that is to say, we're going to select people from the two major political parties. Now you say to me, well, isn't that unconstitutional? How can you exclude independence? And I think the answer is... The answer I would give is that governors and presidents in practice do that repeatedly. And that's why I pose the hypothetical. Practice makes it constitutional. No, but because they... Because a governor... say to themselves or act on the conviction that they're only appointing members of the two major parties to the bench. If that is constitutional, then why do the people of Delaware not have the right to say, actually, we don't want our governor to have that discretion. We want... What you're about to say, I think, answers the question you just posed. You said, why can't the people of Delaware have the right to? Then you said something which I think is the answer to that question. Well, if the people are saying, we don't want our governor to have that discretion. Well, they have taken... First of all, the right at issue here is not the right a governor possesses. That option has not been presented to the voters yet at all, has it? Well, it's been presented to the General Assembly on multiple occasions because this provision has been amended, I think, probably five or six times in the course. So it's the First Amendment right of the General Assembly that trumps, probably a bad choice of words, the First Amendment rights of the independent candidate? I think the way I would put it, Your Honor, is that the rights of the electorate to have... That's the General Assembly under your scenario. Well, that is the General Assembly, but the General Assembly, of course, is elected. Right. And the electorate has supported... So their First Amendment right to discriminate... I'm not saying their First Amendment right to discriminate. Freedom of association, you could look at it that way. Let me go back to Elrod because... This is all in the hands of the electorate. The electorate can throw out the Assembly, which in turn could get new people in there that will change the rules. The electorate can actually change the configuration of who are the major political parties. But is that what you're suggesting? You're suggesting that it is all in the hands of the electorate, which elects the Assembly, which determines who is going to be and what the composition of the judiciary will be. What I'm saying is in the Elrod case, the exception that was created in the Elrod case for policymakers... Well, that's where you need to go. Judges are policymakers. Yes. That exception was created in order to allow democracy to operate properly because the argument that was made to the Supreme Court in Elrod, which involved political patronage for all positions... The first argument that was made by the proponents said, in order for our democracy to operate, the parties need to be permitted to provide political patronage because political parties can't survive without patronage and parties are important to democracy. And the Supreme Court plurality said, well, we don't buy that argument with respect to all of patronage. But we do think that you are right with respect to policymakers. And why are you right with respect to policymakers? Because when a governor appoints a member of the judiciary... The argument is that judges are policymakers? Yes.  The argument is that judges are policymakers and therefore the First Amendment rights... An applicant doesn't have a First Amendment right in connection with an application for that position. Judges are policymakers? Even trial judges are policymakers? I think all... Well, we've set forth a rather elaborate list of powers, but I think... I think the responsibility is to determine the law, apply the law to the facts, and observe precedent. And that conduct, you say, is a policymaking position? I think in Delaware, for certain, judges are policymakers. The Court of Chancery, all of the... Probably the most important, from the state of Delaware's point of view, body of law that is made in Delaware is its corporate law. And the most important component of its corporate law are fiduciary duties. What do you do about the Delaware provisions? The provisions in the Delaware Code of Judicial Conduct, I think it's in all judicial codes, that prohibit a judge from allowing his or her own beliefs as to how a case should be resolved, to control how the case is resolved. Doesn't that take a judge out of the realm of being a policymaker? Well, not in the case of common law decisions that are made. And we cited in our... But what's the difference? What is the difference between common law and statutory? Well, what's the difference in terms of whether or not the judge's political beliefs control the outcome of the decision? I'm sorry, Your Honor. Are you saying that with regard to common law... Ouch, my knee is throbbing. He didn't get me. With regard to certain common law decisions, that if the judge is a policymaker, because his or her personal beliefs determine the outcome of the decision? Is that correct? Well, I think the judge's analysis of what the common law should be... I'm not saying that this is an arbitrary or whimsical decision. But... And I'll take the corporate law as an example. The proposition in the corporate law that the duty of care that directors owes is governed by the business judgment rule. That is a judicial creation. That's not in a statute. There are literally dozens of decisions in Delaware in the area of the corporate law where judges make decisions not only on what the fiduciary duty is. One example is judges decided insider trading violated fiduciary duties.  It was a judicial-made rule. Was that decision based upon the judge's particular personal beliefs or upon what that judge or those judges thought the law required? Well, I think it was what those judges thought the law should be based on their analysis of the issue. What the law should be or what the results should be based upon the law that existed. Well, Your Honor, I know there's this metaphysical theory that the common law is the law that exists in the ether somewhere and judges find it and don't make it. But other than that... I could show you sarcasm with that. I totally agree with that. But that's not where I'm going with this. Let me read this from the court's decision of Branty. They're trying to get a handle on what is a policymaker. Right under subsection 2. Thus, if an employee's private political beliefs would interfere with the discharge of his political duties, it's the Supreme Court, so of course these are masculine pronouns, his First Amendments may be required to yield. The converse of that actually then obviously is if a person's private political beliefs would not interfere with the discharge of his duties, the First Amendment rights are not required to yield. And, Your Honor, I'm going to run out of time. We'll give you more time. This goes to the basic question of what is a policymaker. And that's why I keep coming back to what was Elrod trying to protect when they created the policymaker exception. They were trying to protect the ability of the electorate to elect a governor, for example, because the electorate supported the policies of that governor, and then see that governor appoint people to positions that meet the governor's policy agenda. And they said in that context, political affiliation is a permissible consideration because they were weighing the democratic rights of the electorate to get the election results effectuated against the First Amendment claim of an individual. Judges are that kind of policymaker because whether we like it or not, judges make decisions that impact the electorate and that the electorate has feelings about, or concerns about, or views about. Judges' judicial philosophies impact the decisions they make, and those decisions affect people. And so that is why judges are policymakers, both in the sense of all the criteria the case is put forth, but why a governor can pick a judicial nominee that's from his party because he believes that nominee, as a member of that party, will reflect the judicial view supported by the governor. The people of Delaware have made a decision... Here we're not talking about the governor appointing someone from his or her party. It's broader than that, because the government may not be able to appoint someone from his or her party. That's the very purpose of this provision, is to make politics about the equation. That's true, but it's the same... But we have the same democratic concern on what I would call the state side of this equation. The people of Delaware have said, we want a bipartisan judiciary. They didn't say they want a Republican or Democrat. They said we want a bipartisan judiciary composed of the two major parties. And what that has produced, what that has produced... Think about this for a minute. It requires democratic governors to find Republicans who they can trust, and it requires Republicans to do likewise. I agree with you. It's a very rational scheme, and as I said earlier, I think I said the Delaware state bench is the envy of the state judges throughout the country. Well, from this bench, that's quite an honor. Thank you. I don't know if Collins' picture is up here or not, but the gentleman who's... He's not on this call, but the gentleman who's... The gentleman next to us is named after Collins Seitz. Yes. Incredibly, as you know better than me, being from Delaware, an amazing jurist from the state of Delaware. And I was asking myself as I read the papers here, what would have happened back when Collins was a member of the Chancery Court of Delaware, was trying to become a member of the Chancery Court, if he had been an independent? He wouldn't have been eligible. Under this provision, if the major party provision was in effect then, I don't remember what year Chancery... Today, he would not have been eligible. Yes. He would not be qualified. One of the great jurists of this court in the Delaware courts couldn't have gotten here because he was an independent, registered as an independent, not registered at all. But, in fact, he wasn't. And, in fact, he did reflect. Well, he did not reflect. I'm not sure I've run out of my... Well, no. Don't worry about the time. He clearly, at the time, did not reflect the sentiment of the state of Delaware, which is one of the things that made him so great. He integrated the Delaware schools before Brown versus Board of Education and had death threats brought against him because of that. He did not reflect the popular sentiment in Delaware when he went on the bench. Well, but he did reflect the popular sentiment of a portion, of a major portion, of the population in Delaware. And, Your Honor, I can't think of a more important, especially today, especially with what we've been watching over the last, who knows how long it's been going on, but it seems to get worse every week, that this is a provision that drives people to the middle. This is a provision that pushes an institution to the middle It pushes us toward bipartisanship. And I agree with all of that, but that's not the issue here. It's a fine concept. The issue is not whether or not it's a laudable concept, but whether or not it's a constitutional concept. And the answer to that question, I would submit, is if judges are policy makers, then there is no First Amendment right that cuts off the ability of these provisions to operate. That includes everybody in the judiciary. I assume your argument that they're policy makers, even the trial court. How about municipal courts? I assume Delaware has municipal courts, but I'm thinking of trial courts. You put them under the same label that they are policy makers. Therefore, the governor, the elected official, the highest elected official in the state, has a right to determine who should sit in what court and from what party. I think that's true under the Constitution. I think that would work an extraordinary change. But we'd have to agree with you that judges are policy makers from the Supreme Court of Delaware down to... Well, the only thing that's at issue, in particular in this case right now, is whether Supreme Court, Superior Court, and Court of Chancery are policy makers. Superior Court is a trial court. It is a trial court, but it makes common law. At least in the first instance, it makes common law. But, Your Honor, let me simply... I'm trying to think of a one-sentence way to respond to your concerns, and all I can say is I think that all judges have a philosophy that they bring to the resolution of cases. And I'm not saying an unconscious philosophy. I think people have... judges have judicial philosophies and that's what... and those philosophies are of concern to the electoral process. That's why most states elect judges. I have to give your argument on judges being policy makers some thought, but what if I disagree? What is your argument? Well, our second argument... What if I say they're not policy makers? Under the Branty decision, the Supreme Court basically said, you know, the ability to consider or use political affiliation in connection with an appointment to office is not limited to policy makers. The Supreme Court said there are other circumstances in where it would be appropriate, and the circumstance the court gave was a statute that mandated political balance on a governmental body. It was an electoral... Yes. Very, very different. Well, Your Honor, I would submit that it's not that different because the electoral judges that were issued, at least in the McGuire case, were judges who actually made decisions about what is right and wrong. They weren't there just to represent their parties at the polling stations. That was an entirely different position in McGuire. But the underlying test, that I thought I mentioned earlier from Branty, whether or not the individual's personal beliefs would, either consciously or unconsciously, and she does focus on consciously because that's a lot easier, determine the outcome of that person's decision, that's what a policy maker is. You've got provisions under the Delaware Code that specifically preclude that. And I'll tell you, I'm sure this is true, I haven't taken a poll, every judge on this court who's been here for any length of time has made decisions that he or she did not like. Oh, I agree. So that seems to undermine what you're saying about judges being a policy maker. I don't think it does, Your Honor, because I think that the decision... the different judicial philosophies reflected between Justice Breyer and Justice Scalia are profound and are hugely consequential. And yet I'm sure each of them made decisions where they applied a law that they didn't agree with. But in other situations, those judicial philosophies did make a difference. But my point about a political balanced body is that even if judges... Judge Fuentes asked me, if we disagree with you that judges are policy makers, effectively do we lose? And the answer is no, because under Branty, the Supreme Court recognized another situation in which political affiliation could be considered even if the persons weren't policy makers. And that was a statute that mandated political balance. And the hypothetical that the Supreme Court used in that case was electoral context. Yes, but that same principle has been used in federal agencies. You're talking about an executive agency whose purpose is to carry out policy. In your brief, you've got almost a half a page of agencies where political party controls the appointment. But they're all members of the executive. All those agencies are executive agencies. But it didn't matter that they were policy makers. That was the point that Branty made. The Branty court said you can take political... When a statute mandates political balance, you can take that into consideration even if they're not policy makers. But I would submit in our case, we have a doubly strong case because we have a constitutional provision that mandates political balance like dozens of federal statutes do for people who are supposedly independent. These are independent federal agencies where political balance has been mandated. And the reason given is that the political balance enhances the independence of the agency. That's what we have. I do it. We're kind of back to the legitimate purpose thing. But I would need to hear from Mr. Finger before the entire day is exhausted. Welcome back, John Rebuttal. Before we're exhausted. Good morning, Your Honor. Good morning. I may please the court, David Finger, on behalf of the plaintiff below, appellee, James Adams. Mr. Adams is the counsel that will be with me here today. Does your client have standing... I want to thank you in the meantime that the client will come in and they'll never be introduced to the court. And I always think that it is the attorney's obligation to introduce the client, so I appreciate you doing that. Does your client have standing to challenge the family court or common police court provisions? Yes, Your Honor, for two reasons. The first reason is that my friend on the other side attempted to separate majority and party. But they are conflated because you cannot have a majority of one party unless you're counting numbers party by numbers. And that's one problem. The second problem is that the constitutional provision refers to members of parties. And if you take the words by their plain meaning, someone who is unaffiliated with the parties is excluded. But it's conceivable that had he applied he might have been accepted as an independent. It is conceivable, yes, Your Honor, for example, if there was already a majority of Republicans, for example, that field is open. But I suggest to you, Your Honor, that constitutional rights can't be half-loved. If he's eligible, he should be eligible for any position. Standing is a pretty straightforward, fairly rigid requirement. Yes. You've got to be, you know, in a position where you're simply rejected because of who and what you are. But how do you know that? Unless you make an application. Unless you make yourself a candidate. In not every instance that he would apply he would probably be rejected. But there are instances where he could not apply because there's already a majority in place. So he would be ineligible. But that wouldn't be the family court or the criminal case court, right? Those are the courts I'm referring to. They require a majority of one party and that limits the opportunities. That means that... It's not an absolute bar. Not an absolute bar, absolutely, Your Honor. If they're seeking someone to break the tie, the 50-50 tie, have one extra, he's not eligible for those. Let me ask you a hypothetical. Assume you have a state and in that particular state you have a Democratic senator and a Republican senator. And they make an agreement between themselves that based on whoever the president is it's going to be a three-for-one split. So in other words, they go solicit candidates for the district court with an understanding that if you have a Democrat in the White House you get three Democrats for every Republican. If you have a Republican you get three Republicans for every Democrat. And that's the way they do business. That's the way they've been doing business just hypothetically. That's the way they do business. Is that unconstitutional? I would argue that if there is a practice... No, let's assume that's it. That's what they've been doing business since there's been a split delegation. Is that unconstitutional? They're not considering independence. You've got to be a D or an R to get in the game. I would say yes to the extent that there is political affiliation discrimination. If that is a mandatory requirement as we have in this case. It's not written down anywhere. It's not written down anywhere. But I don't think that the policymaker rule of Branty and Elrod requires it to be written out if there is a practice. And there's a lot of proof problems you'll have in a trial court to prove that the practice was purely political affiliation. They can always say its merits were determinative. But if there is a proven practice I believe that would be unconstitutional. So you have an executive who's looking for Supreme Court justices and those justices have to come from a certain party. And that's the way it's been done for many, many years. Is that unconstitutional? It is arguable. And here's the problem with that is that people conflate political party with political or judicial philosophy. And they assume that if you're one party that you have a certain philosophy. But as we just pointed out. We're talking about political parties here and the hypothetical I'm giving you is the executive is asking they could be a governor or president but there's open Supreme Court positions and they want people from their party. Is that unconstitutional? My initial reaction is if it's not a mandatory requirement it may not be unconstitutional. But here we have a mandatory requirement that it be of a certain political party. The same impact. De facto mandatory. The executive is not going to write it down. Right, exactly. I believe that any yes, I believe that any discrimination of employment in a non-policy maker position which I submit that a judge is not a policy maker and I'll get into that. And it seems like the legislature and the general public accepts it that way. Accepts it because nobody has said anything. And it's expected to be that way. If you're a Republican you look for Republicans to sit on the Supreme Court. And if you're a Democrat you look for Democrats to sit on the Supreme Court. And the Senate people elected by the electorate accepted that. They've accepted it that way for centuries. Accepting something a certain way doesn't make it right or constitutional. Not that any lawyer who wants to be a judge will challenge it. That's a good point. That's a good point. Let's get into the policy thing in Branty for a second. Despite what I said and what I read to Mr. McBride about the way that Branty defined policy maker then gave some examples of policy makers which kind of boggled my mind. It said that a football coach at a state university it said no one could doubt that a football coach at a state university is a policy maker. Well if that's the Supreme Court's metric for what's a policy maker how in the world can judges not be policy makers? Well I think the court went on in Branty to explain the necessity of the policy maker to facilitate the policy of the ultimate ultimate decider for lack of a better term. And Branty made clear The governor you said? No, whoever I don't know not necessarily the governor in a university football coach setting but the dean or whoever is in charge of fundraising. Actually depending on the university the football coach may be in charge of fundraising. But what was made clear in Branty and as this court has recognized in several decisions the purpose of the policy maker decision is to choose someone whose political affiliation has to be the same as the employer or the appointer so that they can facilitate Why that example though? I thought they were going down that road too. And a lot of the discussion seems to be pointing in that direction. Then why is the football coach at a state university a policy maker? That boggles my mind as well. We're boggled together. But if it is given that it is according to the court's opinion why aren't judges policy makers? And if we are then doesn't Mr. McBride have a point about the Branty exception to this? The difference is that judges are not answerable to the appointing authority. The judges are not supposed to be helping the appointing authority implement his or her policies. As John has pointed out But that doesn't speak to what a policy maker is. Because let's assume that the football coach at a state university is a policy maker. And clearly you could argue whether or not the football coach is answerable to the Director of Athletics policy. But I'm trying to figure out why we would not be policy makers within that construct. And I'm having trouble with that. If you look at the Delaware Code that I mentioned to Mr. McBride and look to the theory of what judges do we're clearly not policy makers. But if we look to the example that the Supreme Court gives maybe we are. That was an example given and I don't think there's been a case which has laid out or has actually challenged or brought that to a judicial determination to go through the analysis. So their statement is it's the Supreme Court statement and I'm not going to criticize the Supreme Court statement but it's without any explanation. It doesn't need one. The coach of a state university's football team formulates policy. He formulates policy. There's a difference between one who formulates policy and the policy maker in the context of the First Amendment. The policy maker's job is not to formulate policy but to help implement policy. And that's why there's a requirement of a similarity of a political goal. Judges don't have that and shouldn't have that. And what the concern is is if this court finds that judges are policy makers it is announcing to the nation that the judges that are going to appear before are going to make political decisions and not based on the facts and the law before them. Make political decisions or make policies? Whether the policy that we make we don't like it but we're making policy. So back to what I said earlier where judges of this court have either made decisions or joined the decisions that they did not like or were uncomfortable with. But they did because they felt the law required that. In that case maybe we're making policy. You may be making policy but again you're not making policy to satisfy the executive. So the football coach is answerable to the athletic director. Exactly. And the judges in theory are not answerable to whomever appointed them. That's the distinction you're making here? That is the distinction I'm making here. But the governor would like to have them answerable to him or her. I'm sure they would. I'm sure the president would like you all to answer. And that's why he selects certain people from certain parties. Because he has a policy. He was elected by the electorate. The people of Delaware elected him as governor. And the governor now has a certain policy that the electorate approved. And he would like to see that policy implemented. And that's why he selects certain judges and certain are not selected. That's true. And once they become judges they are no longer bound to those policies. Well, but he'd like to select judges that are going to be somewhat truthful and literate. At the hearing. Well, again, if you believe that judges are not asked are you going to overturn Roe versus Wade then they have no guarantee. Or any other precedent that a judge... Why does that not make them policy makers, though? The expectation is that they will implement the governor's policy. The appointing party. That's actually... Isn't it the way it's done in the federal judiciary? That is with the hope but not the guarantee. Again, we hope... More than hoping that the judge... Certainly more in the Supreme Court appointments. Yes. But more than hoping that the judge will implement the policy. We hope the judge will make an independent determination. What sort of protection do the Delaware judges have in terms of once they've been appointed and confirmed? Well, the judges have 12-year terms. Governors have two four-year terms. So there's very little chance that a judge will not be reappointed as a political payback for disloyalty. And I think that's the system that's in place. And that's how judges are reappointed? By the governor, not by the General Assembly or by the popular vote? That's true. Usually... But the General Assembly confirms. Confirms. But the re... So once you've expired on your first 12-year term, the next governor would have to reappoint you. Yes, and the legislature would have to reappoint. Confirmed. And who knows what the political makeup is going to be of either of those. So again, I'm going to... I want to focus on the point that in all of the cases, excluding certain the monthly judges, but all the other cases, it has been the point that these people are expected to... Policy makers are expected to implement the higher-ups' policy, not create their own. And this court has said repeatedly in third-circuit cases, and there was no mention of it, or discussion of it, in my friend's brief or in an argument, of the requirement that political party has to be an essential requirement in order to perform the duties of a judge. And I hope everybody in this room agrees that it is not essential, it is not even appropriate to even think about in order to sustain the judiciary as an important government institution, not a government program, but an institution. Could you address for a moment the standing issue with regard to the... I believe it's the family court, maybe the chancellor court. Given that he never met an application, he never made himself a candidate for those courts. I think it's part three, part four, maybe four and five. Well, the answer is that, as I think is recognized, he does not have to do a futile gesture. Say that again? He did not have to engage  And it was futile because the provision refers to parties. It says the majority of the party. And as Judge Restrepo pointed out, it is, in certain circumstances, disqualifying. It may not be disqualifying in all circumstances, but it is certainly disqualifying to the extent that he is ineligible for a position in the majority. The chances, it impacts his chances. Exactly. And that maybe is enough depending on how you look at the nature of injury. A reduced opportunity based upon political belief is saying it's sufficient. Right. Another point, to go back to your earlier issue about the football coaches. You made the distinction that they're answerable to the director of athletics. But this court, in more than one circumstance But that's not in the court's opinion, that distinction. It just says that the football coach Yes, it says that. But that's my attempt to give a rationale to it. This court has said in Armour and Staff and Burns versus County of Cambria that the policymaker exception is to be narrowly construed. And I understand the argument that can be made. Well, how do you, how do you match that with the football coach? Yeah. How do you? Well, but since it's precedent on precedent with this court, I just go with it. I wish we could do that. Just kind of go with it. And as I think has been alluded to, the Delaware Supreme Court is the only collective decision making body in Delaware. Below that are individual trial courts. And in Delaware, I'm sure you're aware of the mere fact of a political affiliation is not grounds for disqualification of the court. Again, that's because of the understanding that judges, once they sit on the bench, are presumed to be independent of political influence. Is political a balance improper in the Supreme Court? I mean, I think of the Supreme Court as a very deliberative body. And five members, I believe? Yes. And it has to be a three to two ratio? Well, they could have panels of three or unbonked at five. And it is a majority vote. I see. But in that circumstance, you could have if political party mattered, you could have panels of two Democrats, one Republican, three Republicans, and two Democrats. And the political majority could still inflict their will if they wanted to have a political will inflicting on the people. So it doesn't really resolve the problem. How do you resolve the problem? Delaware has come up with a statutory and a constitutional scheme, which, as I said many times, it does yield results to the extent that is humanly possible, it seems, of taking politics out of the judiciary. And in the course of doing it, even though those provisions are written in terms of political parties, ends up with a judiciary that is not seen as being political, unlike many other kinds or forms of judiciary. And they clearly have a right to do that. How does the state go about crafting a provision that ensures the quality of the judiciary and takes politics out of the equation? You're going to say, well, they can't take politics out of the equation by putting politics into the equation. But in a sense, in terms of the way the public sees it, they have taken politics out of the equation. Well, Your Honor, they have not necessarily taken politics out of the equation for the reason I just said with the balance in the panels on the Supreme Court. But there are other institutional pressures which I suggest promote that excellence on the judiciary. Delaware's 40% of our budget is derived from corporate franchise taxes. And the chief reason that people incorporate in Delaware is not because it's not because of the tax structure. There's not that big a tax difference from other jurisdictions. It is because they have a judiciary that is expert in that field. And so it is encompassed... And it's given by legal considerations and not political considerations. Exactly, exactly. Mr. McGrath's argument. So the point is you can have those political considerations without the need for imposition of a majority or a political affiliation requirement. If they are excellent judges and they're pulled from the cream of the crop of corporate lawyers at least in the Court of Chancery, then there's every incentive to keep that excellence without regard. And you can't say that one party has the franchise... Mr. McGrath, I need to introduce you to the concept of street money, which you've clearly never heard of. It's not a phenomenon in Delaware, I guess. But what you're saying sounds right, but it doesn't get at Mr. McGrath's or his client's concern in terms of creating a mechanism that will yield an excellent non-political or non-partisan judiciary. You're saying, well, you have a system where the cream will rise to the top. We'll get knocked down pretty quickly by whoever's in charge unless certain mechanisms are in play to make sure that that person gets on the bench. And they say they've got a scheme that does that. It is a scheme that does that, but again, I distinguish between political philosophy and political affiliation. A judge can determine, or excuse me, a governor can determine in an interview and with reviews from the Delaware Bar someone's abilities in that regard. And there's no, as I said, there's no no side has a So you're saying just let the governor appoint whoever he or she wants to and trust that the other pressures within the system are going to promote excellence within the judiciary. That's correct, Your Honor. Because, and I won't get into anecdotal evidence, but there are circumstances where the governor pays a lot of attention to what the bar tells them in terms of judicial potential nominees and I don't think we're going to lose that by virtue of the elimination of this constitutional provision. And to be quite candid, Your Honor, although there has been public statements about how helpful this is, that's they're just statements. There is no empirical evidence to show that this requirement has either led to or promoted the excellence of our judiciary or encouraged corporations to incorporate the judiciary here for that purpose. It's a nice statement, but it's really when it comes down to it, just a statement without any support. And as Your Honor pointed out, Justice Seitz would not have been here despite the fact or would not have been on the bench despite the fact that he was on the preeminent legal lines of his time and as far as I know had no particular political bias in his rulings. So, the harm I think done by this provision in violation of the First Amendment which was also adopted by the people of Delaware outweighs the potential benefit which I respectfully submit are unproven. Is it a balancing of interests, balancing of benefits, injuries test? I don't really think so, Your Honor, because the re are balancing tests in the First Amendment and the balancing test in this instance is somebody a policymaker. Is that someone who's necessary? That's the balance that the court took between the need for freedom of association balanced against the need for the executive to be able to implement his or her policies as elected by the Supreme Court regardless of what court they sit on. Including the Delaware Supreme Court. Let me be precise. They are not policymakers in the sense of Elrod and Branty because they are not helping implement policies of the governor. They may make no use of policy. We may have a whole other question if there's a judge who's a chief judge who gets to select the subordinate judges but that's not this case. It seems like the idea of an independent judiciary and being a policymaker, those two ideas don't seem to fit side by side. No, they don't. As Stenar briefed, doctrine is not policy. Policy affects a broad scope of people. So doctrine is to implement constitutional to implement statutory and constitutional policy which are set by the elected officials, Congress, and executive. So what about their First Amendment rights? Mr. McBride's arguing that the General Assembly has a First Amendment right to implement this law. What do they have to say about that? They have a right, their right actually derives from the Delaware Constitution provisions which create a legislature and set forth a system for adopting amendments to the Constitution for adopting laws. They have a right as elected officials to pass laws. But of course those laws are always subject to judicial scrutiny. It's a nice idea. It sounds good. Everybody has a First Amendment right to do certain things. But that's not one I'm familiar with. I would commend to the Court or just quote a little bit from the Seventh Circuit decision, Shondell v. McDermott, 775F says political loyalty is important to the effective operations of government. Close quotes. But it's kind of what Stewart said in Branty. Yes. And so that political loyalty thing, that's important. No one wants to believe that the judges of this court, the Delaware courts, or any courts are allied in their work with the executive branch. Mr. Arnold, has any questions? It's hard. Well, I'm looking at one of the Provision 4 which  the family. Well, you probably agree with the idea that it's hard to imagine judges in the family part making policy because they're dealing with so many different problems on a regular basis. Maybe this is a question for the Governor's Council. I don't know how you make policy in the family court. Also keep in mind that policy is intended to affect the general electorate. The family court particularly is dealing with individual cases. And the laws, develop some laws as they do in all bodies of law, of generalized principles of law that are applied. And the Court of Common Pleas is the trial court, the basic trial court in the state of Delaware? Yes, the principal trial court is the Court of Chancery and the principal  court is the law court and the equity court. And the Court of Common Pleas is a lower echelon court. We used to have a municipal court and then below that was the Justice of the Peace Court. I'm not sure what policy makers are. I'm going to be more disciplined about the red light. If you want to stand on the argument we'll understand that. Your Honor, can I make four points? I apologize. First of all, I'm remiss as my colleagues asked me to remind the court that every court that has confronted the issue of whether judges are policy makers has concluded that judges are policy makers. And if the decision is made that judges are not policy makers, then every judicial appointment could be challenged on the basis that the governor or the judge    decision that judges are not policy makers. Which is why I gave you the quote. And I think that that's the conclusion that judges are not policy makers would have tremendous ramifications. Those ideas don't seem to go well together. The idea of an independent judiciary and the idea of judges being policy makers. That's because our friends have misfocused the issue here. The issue here is not how judges should perform their job. The issue here is how judges should be appointed. And the specific issue here is whether an individual who doesn't get the judicial position have a right to sue the governor or the president and say you violated my first amendment rights because you picked that person instead of me because they're of your party. He is totally excluded. He is excluded unless he is a judge.  the issue here is that if the court were to hold that judges are policy makers that makes every decision subject to suit on a claim by an unsuccessful applicant that their first amendment association rights were violated because you governor have always appointed democrats or you discriminated against me because of the exercise of my first amendment rights and criticizing the governor with respect to some state operation. It would work a massive change in how judicial positions are handled. It would work a massive change in what kind of litigation could be brought with respect to every judicial appointment in this country, not just in Delaware. And why has every court rejected it? Because judges are policy makers in the sense that they shape our government. You shape our government. And family court judges deal routinely with some of the most important policies, preserving families. I've been in family court on guardian rights. I've   court on the right to have parental rights. What more profound policy choices could a judge make than those? It is, but it's also a policy driven determination in the sense that how much weight I put on the mother's claim and how much weight I put on the child's safety. By that definition, every decision the judge makes, every decision is a policy decision. Even a 403-401 balancing test and evidentiary ruling could be construed as a policy decision. I don't think so because I think that there are statutory issues that come up where the statute is just simply clear. Whether you agree with the statute or not, you have to apply the statute. In every decision a judge makes where he or she has discretion, it can be characterized as a policy-making decision. Well, I think when judges have discretion, they are making policy. That is the essence of discretion. That's not a bad thing. That's the essence of the judicial process. And let me ask this. Let's talk about First Amendment rights of applicants to a judicial position. Most states elect judges. And in most states, when judges are elected, the voters make a choice. They discriminate against the applicants for the position based on what that applicant has said in terms of the exercise of their First Amendment rights, and more often than not, what party they're affiliated with. But at least in those states, you can choose between Democrats, Republicans, and any other party that presents itself. Well, any other party that gets on the ballot. And here you can do likewise. Any other party that can get sufficient people registered to become a major party, members of the   or  other party that   enough people registered to become a major party, members of the Republican Party, or any other party that gets enough people registered to become a major party,            people registered to become a major party, members of the Republican Party, or any other party that gets enough people registered to become the  party. And you can    other party that can register to become a major party, members of the Republican Party, or any other party that gets elected. I think he changed his registration. If he does seek positions as a Democrat, he can cite you as saying he's eminently qualified. I'm trying to get it as the timing of the opinion and the decision here. I think he's eminently  I think he's eminently qualified. Thank     Thanks a lot. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.    you.   Thank   you.   Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank            Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.